FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 01, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALYSON S.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

Defendant.

No. 1:24-cv-3144-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Alyson S. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. As is explained below,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] The current Commissioner is substituted as Defendant.

the ALJ erred when evaluating Plaintiff's migraine symptom reports, and this error impacted the ALJ's nondisability determination. This matter is remanded for further proceedings.

## I. Background

At the age of 26, Plaintiff filed her Title 16 application for benefits due to migraines and scoliosis.[3] Plaintiff appeared for a hearing before ALJ Cecilia LaCara in June 2023, at which Plaintiff and a vocational expert testified.[4]

After the hearing, the ALJ denied Plaintiff's disability claim.[5] The ALJ found:

- Plaintiff had not engaged in substantial gainful activity since September 30, 2020, the application date.[6]

---

[3] Administrative Record (AR) 240–46, 293–300.

[4] AR 64–90.

[5] AR 15–33. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[6] The application filing date starts the relevant period for a Title 16 claim. *See* 20 C.F.R. § 416.335.

- Plaintiff had the medically determinable impairments of migraine and scoliosis; however, neither impairment individually nor in combination were significantly limiting and therefore Plaintiff did not have a severe impairment or combination of impairments, and therefore, was not disabled.[7]

The ALJ alternatively found that, if there were severe impairments, they would include migraines and scoliosis and that Plaintiff did not meet or medically equal the severity of a listed impairment.[8] With these assumed severe impairments, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with no climbing and no exposure to extreme heat, extreme cold, vibration, excessive industrial noise, and hazardous machinery.[9] Further, Plaintiff had no past relevant work, and considering Plaintiff's RFC, age, education, and work history, she could perform work that existed

---

[7] AR 18–28.

[8] AR 23.

[9] AR 24.

in significant numbers in the national economy, such as sandwich maker, hand packager, and cleaner II.[10]

Plaintiff timely requested review of the ALJ's denial of disability by the Appeals Council, which denied review.[11] Plaintiff now appeals to the district court.[12]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[13] Thus, the ALJ must articulate her findings and cite such supporting evidence to permit the court to meaningfully review the ALJ's findings.[14]

---

[10] AR 27–28.

[11] AR 1–6.

[12] ECF No. 1.

[13] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[14] *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[15] and such error impacted the nondisability determination.[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]

---

565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[15] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[16] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[17] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

## III. Analysis

Plaintiff argues the ALJ committed several harmful errors by: (1) rejecting her symptom testimony; (2) failing to find that she has a severe impairment; (3) failing to make specific findings as to whether her migraine headaches equal Listing 11.02; and (4) crafting an RFC that is not supported by any medical-opinion evidence or Plaintiff's functional abilities.

### A. Symptom Reports: Plaintiff establishes consequential error as to migraines.

The ALJ determined that Plaintiff's migraines and scoliosis could cause the alleged symptoms but that the "intensity, persistence and limiting effects of th[ose] symptoms are not entirely consistent with the

---

(9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

medical evidence and other evidence in the record."[18] Accordingly, because the ALJ did not find evidence of malingering, the ALJ was required to identify what symptom claims were discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[19] This required the ALJ to provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[20]

Here, the ALJ did not provide such a rationale as to Plaintiff's migraines.[21]

---

[18] AR 22, 25.

[19] *See Smartt v. Kijakazi*, 53 F.4th 489, 497, 499 (9th Cir. 2022). *See also* 20 C.F.R. § 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. (SSR) 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[20] *Smartt*, 53 F.4th at 499 (alteration added).

[21] Because the ALJ's errors when evaluating Plaintiff's migraine symptoms impacted the non-disability decision, the Court need not address Plaintiff's arguments as to her back-related symptoms.

1. Plaintiff's reported symptoms

Plaintiff testified that she has regular migraines and estimated that she would miss three to four days of work per week due to migraines.[22] She stated that when she has a migraine she experiences aura, nausea, and vomiting, and needs to be in a dark room.[23] In addition, she reported that her back pain can exacerbate her migraines, and her back pain increases if she stands or sits for too long, estimating that she needs to break from sitting about every hour or hour and a half.[24] She stated that she lives with her parents, shares a room with her six-year-old daughter, and that her mother helps with Plaintiff's daughter by taking her to school and the park and that her mother performs most of the cooking and cleaning.[25] Plaintiff testified that she takes medication for migraines but "they don't work" and that

[22] AR 70, 72.

[23] AR 70–71, 73.

[24] AR 70–71, 374.

[25] AR 73–75.

gabapentin helps with scoliosis symptoms.[26] Plaintiff stated she watches a lot of movies but if she has a migraine she will stop watching television and "put my head under the pillow."[27] She reported that her prior attempts at employment were short lived because she worked too slowly, sat down for too long, or called out sick too much.[28] She advised that she does not have a driver's license and gets around town by either the bus or by walking, but she does not go out of the house often.[29] She stated that she tries to do stretching exercises for her back pain but they do not always help and she does not do the stretches every day.[30]

Plaintiff reported similar symptoms on Function Reports, and her mother also listed similar symptoms on her statement.[31]

---

[26] AR 74, 79.

[27] AR 76.

[28] AR 76.

[29] AR 78.

[30] AR 83.

[31] AR 293–308, 338–44.

2. <u>The ALJ's reasons, and analysis thereof</u>

To support the general finding that Plaintiff's reported migraine symptoms were not consistent with the record, the ALJ found (1) the treatment for Plaintiff's migraines to be "largely conservative with medication and non-pharmaceutical management, but without specialty treatment or recommendation,"[32] and that less stress and more hydration, sleep, and rest were recommended; (2) that a care provider assessed Plaintiff's migraines to be stable on then-current medication; (3) that Plaintiff reported to providers that her medications did help with her migraines and she did not tell providers that migraines cause vomiting, nor did providers observe such; and (4) Plaintiff's watching of movies was inconsistent with her reports of constant migraines.[33] These findings are not convincing on this record.

First, the treatment records—and course of prescribed medication—are consistent with Plaintiff's testimony that she experiences multiple headaches a week. Notwithstanding continued

---

[32] AR 22.

[33] AR 26.

treatment and adjusting of medications to reduce the frequency and severity of migraines, Plaintiff told treating providers that she was having migraines between two to five times a week. For instance, in December 2020, she reported that headaches occurred three to five times a week, with nausea and light sensitivity.[34] In March 2021, she reported a migraine with aura and nausea; she was started on Imitrex as needed and continued on topiramate.[35] An April 2021 treatment record did note that her migraines were "stable on current [prescription] regimen"[36] and that Topamax (topiramate) had lessened the frequency and intensity of headaches.[37] Then in January 2022, she advised her treating provider that she was having migraines about three times a week, and that Topamax was giving her nightmares.[38] In March 2022, she told the treating provider that her headaches

---

[34] AR 429–31.

[35] AR 422–24.

[36] AR 417.

[37] AR 416–21.

[38] AR 473–74.

decreased to two a week.[39] Then at the next treatment appointment in August 2022, she reported that her medications no longer seemed to be helping with her headaches: "last seen by Dr. Delay in March – propranolol was increased at that time as she had some improvement after initiating [prescription]; today patient reports headaches are worse and neither propranolol nor Imitrex seem to be working."[40] Amitriptyline was prescribed.[41] On this record, whatever "stability" or reduction in migraines was achieved was relatively short-lived.[42]

---

[39] AR 466.

[40] AR 458.

[41] AR 463.

[42] *See Collard v. Bisignano*, --- F.4th ----, 2026 WL 2856741, at *4 (9th Cir. Sept. 23, 2026) ("[T]hat evidence at best points to 'some improvement,' but it does not warrant an inference that Collard was overstating her pain."); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of

Moreover, whether Plaintiff's migraine symptoms would be exacerbated by working a fulltime occupation consistent with the full-range of work set forth in the RFC, or the alternative light-duty RFC, must be considered.[43] Here, longitudinal treatment records do not reflect such improvement in the frequency and intensity of Plaintiff's

---

months or years and to treat them as a basis for concluding a claimant is capable of working."); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (When a "claimant periodically advised her doctors when she was feeling somewhat better[,] [t]his is unlikely behavior for a person intent on overstating the severity of her ailments.").

[43] *See Garrison*, 759 F.3d at 1017 (Reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms," as well as with an awareness that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.").

migraines to be clearly inconsistent with Plaintiff's reported symptoms.[44]

Second, substantial evidence does not support the ALJ's discounting of Plaintiff's migraine symptoms because hydration, resting, and reducing stress were recommended, rather than a consult with a neurologist. The treatment records reveal that providers continued to adjust medications, did not recommend more aggressive treatment beyond prescription medication, and treatment notes did not contain notes questioning Plaintiff's reported migraine symptoms. Thus, it was not valid to discount Plaintiff's symptom testimony because she did not visit a neurologist when no more aggressive treatment option was recommended.[45] Moreover, the ALJ failed to clearly explain how the listed strategies to reduce migraines, such as resting, reducing stress, and hydration, were inconsistent with

---

[44] AR 87–89.

[45] *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (unpublished) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Plaintiff's reported migraine symptoms, particularly as working full-time will likely not facilitate the opportunity to sleep and rest more than Plaintiff was currently able to.[46]

Third, while the ALJ may consider the lack of observed symptoms related to the reported migraines, the lack of observed signs to corroborate Plaintiff's reported symptoms may not be the sole basis to discount them.[47] "[A]t step two of the symptom analysis, the ALJ cannot rely on an *absence* of positive medical evidence to discount a claimant's subjective symptom testimony."[48] Therefore, the lack of observed signs related to the reported migraines, such as nausea, vomiting, closed eyes, muscle tension, or other pain, cannot solely support the ALJ's decision to discount Plaintiff's reported migraine

---

[46] *See* AR 416, 422, 457.

[47] *Smartt*, 53 F.4th at 498.

[48] *Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir. 2024) (emphasis in original).

symptoms.[49] Moreover, some of the treatment appointments were during the Covid-19 pandemic when in-person appointments were limited, and some of Plaintiff's post-pandemic treatment appointments were by telephone, thereby lessening the opportunity for treating providers to observe symptoms.[50]

---

[49] *See Collard*, --- F.4th ----, 2026 WL 2856741, at *4 (recognizing that when a condition is diagnosed on the basis of a patient's reports of pain and other symptoms, "it is error to discount subjective testimony solely because a claimant exhibited little to no abnormality at doctor's appointments or in objective testing"); SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders ("It is helpful to a physician when a person keeps a 'headache journal' to document when the headaches occur, how long they last, what symptoms are associated with the headaches, and other co-occurring environmental factors.").

[50] *See, e.g.*, AR 434 (Dec. 2020: seen by provider when she was sitting in car outside); AR 416 (Apr. 2021: audio visit because of pandemic restrictions); AR 449 (Apr. 2023: telephone consult).

Fourth, although Plaintiff did not report to treating providers that her migraines cause her to vomit, treatment records indicate she did tell providers that her headaches cause nausea and light sensitivity.[51] Thus, the inconsistency between treatment notes, which did not list vomiting as a migraine symptom, and Plaintiff's testimony that her migraines cause vomiting is not a valid reason to discount her reports of frequent migraines causing nausea and light sensitivity.

Finally, substantial evidence does not support the ALJ's finding that Plaintiff's reports of movie watching were inconsistent with her constant migraines, as Plaintiff testified that she will "turn the TV off

---

[51] *See* AR 431 (Dec. 2020); AR 424 (March 2021); AR 458 (Aug. 2022). An ALJ may consider discrepancies between a claimant's reported symptoms during the administrative process with the claimant's reports to treating providers and the observations of the providers. 20 C.F.R. § 416.929(c)(4); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms.").

and put my head under the pillow" on a day that she is having a migraine.[52]

None of the reasons provided by the ALJ to discount Plaintiff's migraine symptoms—symptoms that based on the vocational expert's testimony preclude her from sustaining fulltime work given the number of caused absences—are clear enough to convince the Court.

**B. Step Two: Plaintiff establishes error as to migraines.**

At step two, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[53] This involves a two-step process: (1) determining whether the claimant has a medically

---

[52] AR 75. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period").

[53] 20 C.F.R. § 416.920(c).

determinable impairment, and (2) if so, determining whether the impairment is severe.[54]

Here, the ALJ found that Plaintiff had the medically determinable impairments of migraines and scoliosis, but determined these impairments were non-severe as they would not have more than a minimal effect on Plaintiff's ability to work.[55] The Commissioner argues that, even assuming the ALJ erred at step two by finding migraines and scoliosis to be non-severe impairments, such error was harmless because the ALJ provided an alternative analysis by proceeding past step two by assuming that Plaintiff's migraines and scoliosis were severe impairments.

The Court disagrees. The vocational expert testified that one who misses two or more workdays per month or is off task more than 20 percent of the day will not sustain employment.[56] Therefore, the ALJ's

---

[54] *Id.* § 416.920(a)(4)(ii).

[55] AR 21–23. *See* SSR 85-28: Titles II and XVI: Medical Impairments That Are Not Severe.

[56] AR 87–89.

discounting of Plaintiff's reported migraine symptoms harmed the ALJ's analysis at step two, impacted the RFC, and allowed for the non-disability decision.

**C. Remand: further proceedings.**

Harmful error occurred.[57] Plaintiff asks for an award of benefits. However, disability is not clearly established and further administrative proceedings are needed for the ALJ to consider Plaintiff's disability claim.[58] Newer medical records are to be obtained, and a physical consultative examination is to be ordered given the passage of more than four years since the last examination was ordered. Furthermore, the ALJ must consider how Plaintiff's lumbar

---

[57] Because the ALJ erred when evaluating Plaintiff's migraine symptoms and at step two, the Court need not address Plaintiff's other arguments.

[58] *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014) (explaining that when an ALJ commits harmful error in denying disability benefits, the proper course, except in rare circumstances, is to remand for further administrative proceedings).

conditions of scoliosis and accentuation of the lordotic curve may impact the frequency or intensity of Plaintiff's migraines.[59]

Also on remand, if the ALJ discounts the lay statement from Plaintiff's mother, the ALJ must provide germane reasons for doing so.[60]

## IV. Conclusion

Plaintiff established the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social**

---

[59] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (recognizing that the RFC must account for all impairments, both severe and non-severe).

[60] *See Fain v. Bisignano*, --- F.4th ----, 2026 WL 2795427, at *5–6 (9th Cir. Sept. 18, 2026).

**Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 7**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 1st day of October 2026.

EDWARD F. SHEA
Senior United States District Judge